**James E. SIMMONS et al., Plaintiffs,**

v.

**James R. SCHLESINGER, Secretary of Defense, et al., Defendants.**

**Civ. A. No. 74–383–N.**

United States District Court,
E. D. Virginia,
Norfolk Division.

July 24, 1975.

Hill, Tucker & Marsh, Richmond, Va., for plaintiffs.

Edward R. Baird, Jr., Asst. U. S. Atty., Norfolk, Va., Matthew Wheeler, Washington, D. C., for defendants.

## MEMORANDUM OPINION

KELLAM, Chief Judge.

Plaintiffs, four black male employees at the Naval Air Rework Facility (NARF), Norfolk, Virginia, seek redress for alleged discriminatory employment practices. Jurisdiction is alleged under and pursuant to 42 U.S.C. § 2000e–16 and 28 U.S.C. § 1331(a).

In July 1972, a Merit Promotion Vacancy Announcement for the position of Production Controller, GS–1152–5 was issued. Seven options or technical specialties were advertised under the General Title of Production. Each of the plaintiffs submitted applications and were selected for promotion. Pursuant to a Merit Promotion Vacancy Announcement for the position of Production Controller, GS–1152–7, each of the plaintiffs applied, submitting applications identical to the ones submitted for the GS–5 positions. There were numerous other applicants, many of whom held a GS–5 rating for periods in excess of the plaintiffs.[1] When the ratings were published, plaintiffs observed that their ratings on the GS–5 register were not the same on the GS–7 register. In some instances the plaintiffs ranked higher on the GS–5 register than some who outranked them on the GS–7 register. Hence, the issues of this case arise from the difference in the ratings of plaintiffs on the GS–5 register and the GS–7 register, or the ratings assigned them on the GS–7 register.

The GS–7 rating panel consisted of four persons, two white men, one white woman, and one black woman. They sat for some six weeks grading over three hundred applications. Each member of the panel was fully qualified. Most of the applicants were graded on seven options for Production Controller.[2]

The panel used the applications filed as the basis of their ratings, and followed the procedures prescribed. In fact, there is no evidence to even intimate that the ratings of the panel were not in accordance with prescribed procedure.

After the ratings were made known, some forty complaints of the ratings were heard by the panel. Most of the complaints came from white persons. Each complaint was heard by the panel and an opportunity was given to each complainant to bring to the attention of the panel any fact which such complainant felt should have been considered by the panel.

Each member of the panel graded each applicant on each element. Thereafter, in mutual discussion the panel agreed on a mutual or uniform grade.

In most instances members of the panel did not know the applicants.

After the rating list was published, plaintiffs contacted the Deputy EEO Officer (a black) and alleged there had been discrimination in the ratings given on the GS–7 list. He referred the matter to an EEO Counsellor for the purpose of conducting an informal inquiry into the complaints with the hope of resolving the matter. The Counsellor reviewed the two registers and found that some of the plaintiffs did not rank as near the top on the GS–7 register as they did on the GS–5 register. Based on this he reported there was the appearance of discrimination.

A formal complaint was filed. Pursuant to request of the Commanding Officer, Captain Shine, the Navy's Regional Office of Civilian Manpower Management (ROCMM) appointed EEO Investigator Moses T. Boykins to investigate the report. He reported that plaintiffs had been discriminated against based primarily on the finding that plaintiffs

---

1. While the GS–5 and GS–7 vacancy announcements were advertised at the same time, and applied for by plaintiffs, the GS–7 rating panel did not convene until a year later.

2. The seven options were Electronics; Electrical; Precision Instrument and Scientific Equipment; Metal Products; AF & AFE; Machine Tools; and A/C and P.E.

ranked lower on the GS–7 register than some white persons over whom they rated on the GS–5 register.

Captain Shine, the Commanding Officer at NARF, rejected the report. He said that he was informed that he could not proceed to make a decision on this report; that Mr. Boykins did not make a proper report; it was not complete; that it showed no violation of any Navy Regulations; and was not supported by facts.

Thereafter Captain Shine requested the Director of ROCMM to conduct a further investigation, saying that the Boykins investigation had not been "in sufficient depth and scope to furnish me adequate information upon which to execute (his) responsibilities 'as EEOC.'" He pointed out that four employees were involved who were candidates under two merit promotions, and that while the report purported to be an examination of their treatment under the two merit promotions announced, the record submitted "indicated the events concerning their candidacy under one option out of seven," and that the panel members under one of the announcements were not contacted. (Def. Ex. 20, Tab Case File, page 15). Thereupon, Mr. Benton E. Owens, EEO Investigator was directed to make an investigation. He was assisted by Mr. Boykins. The report says "There was no evidence of bias," and that the discrepancies in the ratings on the GS–5 register and the GS–7 register were "not influenced by consideration of race."

In addition to the reports before Captain Shine, he had two qualified persons make a determination that the top 30 persons on the GS–7 register were in fact eligible. Thereafter, he made his evaluation of the plaintiffs' qualifications and concluded the GS–7 rating panel had been liberal in grading the plaintiffs. Since assertions had been made against specific members of the panel, Captain Shine checked the scores awarded by those two members (both white) to see how their individual scores on the grades given plaintiffs compared with the scores of the other members of the panel. He found they had rated them as well, as high or higher than the black member of the panel and the union representative. He also checked the registers in question to see if he could find evidence of discrimination. He concluded there was no evidence of race discrimination and so notified plaintiffs, advising them of their right of appeal. They elected not to appeal but to proceed in this Court.

■ The limit of this Court's jurisdiction is to determine whether any personnel action taken affecting employees or applicants for employment are "made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–16(a). If it is not, there is nothing further to be done in this action.[3]

■ Defendants have maintained the issue of discrimination should be made solely from the Administrative Record. Plaintiffs assert it should be made in a trial *de novo*. Each agrees the Administrative Record should be an exhibit and be considered by the Court. It has been suggested that the determination of the issue should be made from the Administrative Record, supplemented by such evidence as the Court may permit or feels is necessary to clarify, explain or supplement the Administrative Record.

This Court has previously ruled plaintiffs are entitled to a trial *de novo*.

We turn now to whether the evidence establishes that all personnel actions af-

---

3. Assuming the jurisdictional grant is broader and that the defendants can be held liable if their actions adversely affect plaintiffs because of their race, there is no credible evidence to support a finding that the actions, practices, or policies of defendants have had racially discriminatory effects upon the plaintiffs. To the contrary, the evidence is overwhelming that defendants are committed to a policy of equal employment opportunity and that the careers of plaintiffs have made significant forward progress in recent years.

fecting plaintiffs' employment or application for GS–7 positions were "made free from any discrimination based on race."

Captain Shine, the Commanding Officer at NARF, and the EEO Officer at that installation testified that since he has been Commanding Officer all plaintiffs have been promoted four times, one of them five times; that he kept a chart on the promotions of minorities and it established all that could be done to assist the minorities had been done; that blacks have moved up significantly, particularly in GS–5 positions.[4] He said he was a member of the NAACP, carried his card with him at all times and tried to live by the principles it promoted; that he knew and had socialized with the plaintiffs; that he had been given citations for his performance in activities with the blacks, and had been named Military Citizen of the Year.

While plaintiffs complain of the actions and conduct of Captain Shine, it was during his tour of duty that plaintiffs began their promotions.[5] Plaintiff Simmons testified that a black named Wiggins informed him that he had complained to Captain Shine about some discrimination and that after investigation, Captain Shine ordered his promotion.

The Deputy EEO Officer Santiful is a black. He is and has been President of the Hampton Branch of the NAACP since 1965. He said he had devoted his activities to eliminate discrimination; that programs had been adopted to redesign positions in the various offices, to break up shops which were predominantly black by moving and transferring personnel; that he had no knowledge of any alleged discrimination which had not received attention. He said his office was providing EEO training for all

supervisors to keep them informed of the plans for integration of all facilities; that he brought in outside consultants, some of whom were college professors and other who could assist in promotion of blacks. He said that to obtain promotions, applicants must have necessary and required experience and training; that in order to obtain the training and experience blacks were being sent to training schools and given special assignments. He said there had been considerable improvement at NARF in the last few years, and that blacks can advance and move to higher grades. He testified that he did not find any evidence of discrimination.

While plaintiffs asserted they were discriminated against, they could point to no act of discrimination. The only suggestions of discrimination were opinions of the plaintiffs and their conclusions drawn from the gradings given them on the GS–7 register. Some of the plaintiffs said they believed Santiful, the EEO Deputy Officer, a black discriminated against them. The basis of such a charge was that he did not correct their complaint, i. e., grant them the relief requested.

Some of plaintiffs said they believed that Mr. Armstrong and Mr. Brice, members of the GS–7 rating panel, discriminated against them when grading their applications. But the evidence established that in every instance, except one, they gave as high or higher grades to plaintiffs as did the black member of the panel. While plaintiff Ferebee at one point said they discriminated by the grades they gave, he said he would not say they discriminated because of race. Plaintiff Simmons said he should have received a score of 17, which is a perfect score, yet no applicant out of the some

---

4. Qualification for promotion must take into consideration prior experience, including time in grade below the one to which applicant seeks promotion.

5. Plaintiff Day testified that in 1965 he was an applicant for GS–6 rating, but failed the

examination; he again failed the examination in 1968, but won his promotion in 1971; Plaintiff Ferebee received his promotion to GS–5 in 1972; Plaintiff Holloman was granted promotion to GS–5 and in 1974 a white man was removed from a position and it was given to Holloman.

300 received a score higher than 15. He also believed that the black member of the panel discriminated against him because he said she did not know what she was doing. Yet each of the plaintiffs testified they knew of no one on the GS–7 list who had been declared eligible foɪ promotion who was not eligible, nor did they know of anyone being shown or granted a preference, and they were not able to say that anyone promoted was shown a preference.

Each member of the GS–7 rating panel testified in this case. Their rating sheets are in evidence. Only in a limited degree did they know any of the plaintiffs or other applicants. Each of them said no effort was made to identify the applicants by race, and that race was never mentioned; that no person ever tried to influence their rating` or activities; and that there was no discrimination in any way, nor was there ever any evidence of discrimination of any panel member. Each member of the panel graded each applicant on each element. Thereafter they discussed the items and arrived at a group grade.

One of the charges made by plaintiffs against panelist Armstrong was that he showed a preference to his friend Evans, but the evidence established that Armstrong gave Evans a lower grade than any other member of the panel.

The evidence is uncontradicted that the judgment and discretion of the members of the rating panel is a factor in rating. The GS–7 panel used only the applications and information contained therein, with the qualifying time being done by a Civil Service expert. The GS–7 panel was described as being "tougher" in their grading.

Again, there is no issue as to whether all regulations were followed by the rating panel.[6] The only complaint is that

plaintiffs were discriminated against because of race. While this is the complaint, there is not a particle of evidence to support the allegation.

■ The record is abundantly clear that the race of plaintiffs had nothing whatsoever to do with the ratings received or their placement on the GS–5 or GS–7 registers; nor can the inference of *racial* discrimination be drawn from the mere fact that plaintiffs were placed in different relative positions on the two registers in question.

■ In their posttrial briefs, plaintiffs and defendants spent considerable time reciting and analyzing statistical evidence. Plaintiffs contend that their data establish not only a prima facie case of racial discrimination but clear proof of the fact of discrimination. While the Court is well aware that "[s]tatistics can in appropriate cases establish a prima facie case of discrimination, without the necessity of showing specific instances of overt discrimination," *Barnett v. W. T. Grant Co.*, 518 F.2d 543 (4th Cir. 1975) at 12 and cases there cited, this is not such a case. Plaintiffs' carefully selected statistics do not relate the true picture of the promotional practices and policies at the NARF. A more accurate and comprehensive view of such practices, procedures, and policies is determined by an analysis of all of the data. Any discrimination which may have existed has been eliminated and corrected. The data presented shows the significant advances being made by plaintiffs and other blacks in their careers at the NARF.

■ Thus, even if we assume that plaintiffs' data establish a prima facie case and that the burden of going forward with the evidence shifted to defendants, the evidence presented more than adequately rebuts any inference of

---

**6.** It has been suggested that defendants have violated certain regulations in the administrative processing of plaintiffs' complaint. After careful review of the applicable regulations and the procedures actually utilized by defendants in this case, we find defend-

ants have complied with all applicable regulations and that any actions which may have been taken in addition to those required by the regulations did not violate any of plaintiffs' civil rights.

**1332**

discrimination. Nor have plaintiffs shown that defendants' explanation of whatever minor statistical discrepancies may exist is merely pretextual. *Cf. McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800–04, 93 S.Ct. 1817, 36 L. Ed.2d 668 (1973). Not only have plaintiffs failed to establish racially discriminatory promotional policies, they have not submitted a particle of credible evidence in support of their claim.

For all of the foregoing reasons, plaintiffs are not entitled to relief and judgment will be entered in favor of each defendant.